(C.D. 4831)

THE KINNEY CO., PLAINTIFF v. UNITED STATES, DEFENDANT

Court No. 77-4-00573

(Decided December 14, 1979)

*Doherty and Melahn* (*Robert Emmett Mullin, Jr.*, on the briefs) for the plaintiff.
*Alice Daniel*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, Field Office for Customs Litigation (*Susan C. Cassell* on the briefs) for the defendant.

OPINION AND ORDER

WATSON, Judge: This dispute is before the court on cross-motions for summary judgment. The merchandise in question consists of two types of flat metal pieces with enamel decoration, referred to as

"flats." One is called the "Key-Shaped Mittersill" and the other is called the "Liberty Bell." The Mittersill flat is roughly in the shape of a key blank 1¼ inches in length and one-half inch in width. It has on its face the name of the purchaser in script, a resort known as Mittersill, and the emblem of the resort, both on a white enamel background. The Liberty Bell flat is in the familiar shape of the Liberty Bell and is decorated in the colors of red, white, and blue. It measures three-quarters of an inch in length and slightly less than three-quarters of an inch in width.

The merchandise was imported from Taiwan and entered by mail at the port of Providence, R.I. It was classified under item 740.38[1] of the Tariff Schedules of the United States (TSUS) as parts of jewelry and assessed with duty at the rate of 27.5 per centum ad valorem. It is claimed that the merchandise is properly classifiable under item 657.30[2] of the TSUS as articles of copper, not coated or plated with precious metal, and dutiable at the rate of 0.6 cent per pound plus 11 per centum ad valorem.

The essential facts of the case are not in dispute although they have been the subject of some caviling between the parties. After removing the cavils and deleting those matters which are more in the nature of legal conclusions, the material facts in the case, based on the court's understanding of the record herein, are as follows:

1. The merchandise at issue in its condition as imported consists of metal flats with enamel decoration.

2. The merchandise is not used in its imported condition.

3. After importation and prior to sale the merchandise is subjected to additional processing.

4. After processing the merchandise is used for jewelry and non-jewelry uses.

Plaintiff relies on its presentation of representative samples of the importations and the affidavit of plaintiff's president to establish that the merchandise in question is not a part and is in chief value of copper. Plaintiff argues that in its condition as imported the merchandise is insufficiently advanced to be a part of jewelry and has equal potential to be used in both jewelry and nonjewelry items.

---

[1] Schedule 7, part 6, subpart A:
  Jewelry and other objects of personal adornment not provided for in the foregoing provisions of this part (except articles excluded by headnote 3 of this part), and parts thereof:

  \*     \*     \*     \*     \*     \*     \*

  Valued over 20 cents per dozen pieces or parts:

  \*     \*     \*     \*     \*     \*     \*

  740.38        Other_____ 27.5%  ad val.
[2] Plaintiff also made claims under items 654.05 and 657.35 but only the 657.30 claim was argued.
  Schedule 6, part 3, subpart G:
    Articles of copper, not coated or plated with precious metal:
  657.30        Of copper, other than alloys of copper; of nickle silver or of cupro-nickel__ 0.6¢ per lb.+
                                                                                             11% ad val.

Defendant relies on the presumptive correctness of its classification and on plaintiff's response to interrogatory No. 12(b) that "after manufacture, the chief use of the Mittersill flat and similar merchandise is as jewlery."

Plaintiff's argument that the importations are not sufficiently advanced to be parts is ingenuous. They are clearly much too developed in form and in detail and too close to the final product to be considered mere material. While it is true that in their condition as imported they have the potential to be ultimately used for a variety of jewelry and nonjewelry uses, this "potential" is not reduced by their further advancement. When they are finally finished they have the same potential for alternative uses, and it is only the final act of attachment to specific items which "seals" their use. In other words, it might be an argument against determining the chief use in their unfinished state if further processing would create distinctions between those which would become parts of one type and those which would become parts of another type. See, for example, the treatment of amberoid shapes in *United States* v. *National Importing Co. (Inc.) et al.*, 12 Ct. Cust. Appls. 186, T.D. 40169 (1924). Here the further processing does not develop any distinction between the unfinished objects but simply brings them all into the same undifferentiated state of readiness for use. Therefore, the processing or advancement, being the same for all the objects, can be eliminated from the "equation" and it can be reasoned that the chief use of the unfinished object is the same as that of the finished object.

The implications of plaintiff's argument that these objects have no use at all in their imported condition would disrupt a basic statutory arrangement. If that reasoning were followed, no unfinished article could be classified in the provision for the finished article since it could always be argued that articles have no use in their unfinished state. Yet it is clear from general interpretative rule 10(h)[3] that the tariff schedules contemplate that articles whose finished form can be definitely discerned are described by the provision for the finished article even if they are unfinished.

Plaintiff makes a related argument that what was done here violated the principle that articles are to be classified in accordance with their condition as imported in that the chief use attributed to them does not become manifest until they are in finished form. However, this is based either on the assertion that the importations have no use in

---

[3] TSUS general headnotes and rules of interpretation:

    10. *General interpretative rules.*—For the purposes of these schedules—

        (h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished:

their imported condition, which is a groundless fiction, or on the assumption that they have a multiplicity of potential uses which are not determinable except as processing directs them one way or the other. As discussed earlier, plaintiff has not proved that the processing does anything to differentiate between these importations and therefore it is reasonable and correct to consider that their uses do not vary according to their condition. Consequently, they were classified in accordance with their condition as imported at which time the chief use could logically be ascertained.

For the same reason, although technically the answer to defendant's interrogatory 12(b) spoke of chief use after "manufacture," because the processing of the importations finished them in a uniform manner without developing use differentiations between them, it is logical to reason from the answer that absent intervening changes the chief use of the importations after "manufacture" must be the chief use at the time of importation. Accordingly, the answer is either an admission or proof by logical extension of the fact that the importations are chiefly used in jewelry. The defendant's cross-motion for summary judgment must therefore be granted, and it is hereby

ORDERED, ADJUDGED AND DECREED, that plaintiff's motion for summary judgment be, and the same hereby is, denied in all respects; and it is further

ORDERED, ADJUDGED AND DECREED, that defendant's cross-motion for summary judgment be, and the same hereby is, granted in all respects; and it is further

ORDERED, ADJUDGED AND DECREED, that judgment be, and hereby is, entered affirming the Customs classification of the imported merchandise under item 740.38, TSUS, and the assessment of duty thereunder at the rate of 27.5 per centum ad valorem. The action is accordingly dismissed.